Continental Lines v. Lubrizol. Ms. Stinnett. Good morning, Your Honors, and please the Court and Counsel. My name is Jenny Stinnett and I'm here today to represent the appellate American Commercial Line Inc.'s in its appeal of a motion dismissing all but one claim against Appalachia, the Lubrizol Corporation. This case is about deception in a commercial setting between sophisticated entities, but while we're really here today, it is about civil procedure and whether or not ACL sufficiently pled allegations to form plausible claims for agency, which is basis for its vicarious liability of fraud, civil deception, breach of contract, and quasi-contract, constructive fraud, and third-party beneficiary. ACL believes the Second Amendment complaint, because it is replete with questions of fact in it, would not just should have not withstood a motion to dismiss, it actually should have withstood a motion for summary judgment. The District Court said and did two different things in its opinion and order. Although the District Court gave lip service to the motion to dismiss standard and the inferences that are supposed to be given to the against VCS. We have settled with VCS, Your Honor. So they are no longer in the litigation and as has Lubrizol. So what is it you're trying to get from Lubrizol that you didn't get from VCS? We are trying to get from Lubrizol, because Lubrizol was there, represented VCS as their exclusive agent in the course of a career relationship. In addition, we are trying to get, they are liable for their own actions of constructive fraud, and that they did not tell ACL when it terminated its relationship with someone it held out as their exclusive agent. This is not a simple distributor relationship, as the court says, or a buyer-seller relationship. This started in October 2008, went through a courting period between VCS and Lubrizol, where Lubrizol was holding VCS out as an exclusive agent. We have allegations saying that they were the exclusive agent. We have testimony to support that they were the exclusive agent and specifically pled that. So not only did ACL plead that they were their agent based on actual authority, they also have a litany of allegations regarding the parent authority. So because Lubrizol held VCS out as its agent, it is then responsible for the breaches that VCS committed, as well as the torts. As the court is well aware, what happened here was the relationship abruptly terminated between Lubrizol and its exclusive agent, and no one bothered to tell ACL. And the reason why that, which is all in the second amended complaint, the reason why the relationship was terminated is because Lubrizol found out that VCS was self-dealing and unethical. Rather than just picking up the phone and calling ACL, who it had a two-year relationship with, who it had worked with beside, had developed a test, had recommended that additive be used in its full fleet because of its fuel efficiency, and the fact that it would save... So is your argument Lubrizol's failure to notify ACL, whatever it is, was fraudulent? Yes. Yes. They had a duty to notify? Absolutely. What is the basis of the duty? The basis of the duty is several parts, Your Honor. This is our constructive fraud claim, which is count three. We believe that the duty... the relationship, which is also, I will point out a question of fact, that should have been left for the jury to decide and not the court. But as ACL pled in its complaint, not only was Lubrizol in a special relationship with ACL because of what it had developed in the course of the field test, and the fact that it had been working with ACL very closely for this long period of time, and because Lubrizol had said, we're going to continue to test the efficacy in the rollout, we're going to continue to be a because of that special relationship, we believe that Lubrizol had a duty and pled that. In addition to that special duty, and that special relationship, also Lubrizol had superior knowledge that ACL had no way of knowing. And its silence, because of that... Possession of superior knowledge is not fraud as such. I'm sorry, Your Honor? Possessing superior knowledge doesn't create a duty to disclose it. In some situations it does, Your Honor. What's special about this situation? Well, first of all, the superior knowledge is that it... No, I forget this. Where does the fraud come in? The fraud comes in because it's constructive fraud. The fraud is based on the omission. What's constructive fraud? It's something that's not fraud, but treated as if it were, I gather. Well, basically, it's when you have a duty because of a relationship, which we talked about, and then by omission, you breach that duty. So by not telling another party who you have a duty to... Well, of course if you breach a duty or, you know, committed some wrong, but why do you call that constructive fraud rather than fraud? Because it's by omission. The law calls it constructive fraud because it's fraud by omission, as opposed to affirmatively doing something. They had a duty to disclose a material fact. Sounds like you're just calling every breach of contract constructive fraud. I don't know what turns on this. Why don't we talk functionally? As far as what makes this different and why they had a duty or why this relationship or... I guess the difference is... I don't think anything turns on the phraseology. I think that what the situation is in this context, when you have a course of dealing between two parties, where representations are made and there are material facts, and something changes that would dramatically affect the other side's decision, you then have a duty to tell them. Was there a contract between Lubrizol and ACL? There was not a direct contract. We have alleged a quasi-contract. That's important. There was a what? There was a quasi-contract. What on earth is a quasi-contract? A quasi-contract... It's another constructive fraud. In other words, it isn't a contract, but you hope it's treated as if it were one. I will say in this situation that Lubrizol held itself... We have to go back to the fact that, first of all, we're talking about agency on all these causes of action, too. So if the court finds, and we do believe that we pled with sufficiency to agency relationship, then everything that BCS did, and we know they did something wrong... Well, why didn't ACL ask for a contract with Lubrizol? It actually was in the process of doing so, and we had pled that it was always supposed to be a three-way contract. In other words, so we did this testing. We did it for two years. Only there were only two parties to it. If you want a contract with somebody, you've got to contract with them. Look, we're dealing with state law here. So I wish you would tell me what rule of state law requires a supplier to a vendor to notify the vendor's customer when the supplier cuts off the vendor. That's what you're arguing. You're arguing there's a duty to notify the vendor's customer. So what state case or case you go to is American Heritage Banco versus Cranston, as well as Frey versus Workhorse Custom Chases. And basically, what Indiana law says is that you don't have to have a contract. And to have constructive fraud, you do not have to have a contract. You have to have a special relationship. And if you look at what ACL has alleged... What's the special relationship? The special relationship is that they had a relationship for two years and said, this is our additive. This is our guy. We want you to put this in your boats. We only did the test because... Is there, by the way, such a thing as a quasi-special relationship? I haven't found it yet, but if I do, I'll let the court know. I have not seen a quasi-special relationship, no. But the bottom line is that Lubrizol and BCS had an agency relationship, and we pled that. And we also pled constructive fraud. You have to plead a duty that comes to rise. And the language of the case law is clear. It does come around by a special relationship, which has to do with superior knowledge. And the superior knowledge, again, I see that I'm done. The superior knowledge, again, the situation... Why shouldn't the law leave that to them, rather than allowing tort suits? Your Honor, I understand the point of contracts, but sometimes parties don't always have contracts. They simply don't. Well, too bad for them, right? These are not children. These are companies. They have loads of contracts. They do, Your Honor. So why don't they have a contract with each other if there's some concern on the part of ACL that Lubrizol may not honor the understanding, right? Your Honor, if I can answer your question, I think the bottom line here is that Lubrizol held out its agent, which is who we did plead, and that's who they did have a contract with. Held them along the way and said, this is our guy. Do business with them. We're right here with them. Everything you do with them, you're doing with us. And that's the answer here. They held this person out as their... Not just their distributor. This wasn't a simple distributor relationship, as the court concluded, incorrectly, by weighing evidence. We pled actual agency and apparent agency, and we also pled all the elements of constructive fraud under Indiana law, as well as third-party beneficiary. Okay. Well, thank you. Thank you. Thank you very much. Mr. Louderdale? Good morning. May it please the Court, Ms. Stinnett. Your Honors, the problem here is that ACL is trying to fit a square peg into a round hole and create an agency claim where one simply doesn't exist. As this Court is well aware, an agency claim requires the alleged agent to actually be doing something on behalf of the principal and acting on the principal's behalf, such as signing a contract with the principal's name on it or doing some action on the principal's behalf. We don't have that here. In your typical case, the alleged principal, the defendant, defends the case by saying, that's not my signature on that contract, I wasn't the one who did it, it was this guy. And then the plaintiff comes back and says, okay, but there was an agency, and that's how you get to the vicarious liability. But the bottom line in every agency case is that you have to have an agent who is intending to bind the principal. We don't have that here at all, because all we have is a situation where VCS, the alleged agent, was acting on its own behalf. And rather than trying to hold Lubrizol responsible for some action that VCS performed on behalf of Lubrizol, ACL is trying to hold Lubrizol responsible for actions that VCS performed on its own behalf. And the scope of the agency always becomes very important in an agency case such as this. And to get there, to look at exactly what ACL pled the agency was, ACL pled that VCS was Lubrizol's agent for the sale and marketing of a product called 8411A. That's it. And so whenever you have a case like this, you have to look beyond the pleadings, because we are, of course, dealing with Twombly and Iqbal and a plausibility standard, and it's not enough for ACL to say Lubrizol told us VCS was its agent. That gets them nowhere. They have to allege that VCS was acting on our behalf and that VCS was acting within the scope of its agency. If all of those things come together, those are the pleadings, those are the allegations that must be made. Here all we have is the first very naked allegation that Lubrizol told ACL that VCS was its agent and, again, the scope of the agency as alleged is an agency for the exclusive sale and marketing of 8411A, which, as the district court found, means a distributor. Under Indiana law, and there's Indiana case law even as interpreted, there's Seventh Circuit case law interpreting Indiana law that says being a distributor is not enough to make you a legal agent. We have a problem with the pleadings in the first instance in that simply alleging that somebody is a sales agent, an exclusive sales and marketing agent, doesn't get you to the point where that person is a legal agent. Then on top of that, what's missing from ACL's complaint is any allegation that VCS was acting on behalf of Lubrizol when it committed the wrongful acts that it's alleged to have committed. As this court is aware, and as my colleague explained when she was up here, all of the claims, however you call them, they can all be boiled down to two buckets. There's contract claims and there's fraud claims. If you look at the contract claims, Lubrizol can't be held vicariously liable for the contract between VCS and ACL because Lubrizol's name is not on that contract. When ACL signed that contract, and again, when I say the contract, there is no actual contract. There's a memorandum of understanding when there's a series of invoices. Lubrizol isn't on those. When VCS signed the memorandum of understanding, it signed it as VCS. There's nothing on there where VCS is signing the name of the principal, and therefore you can't have an agency claim and one's not alleged. It's the same situation as you would have in an employment context or an attorney-client relationship or any other type of agency context. As an agent for my client, if I'm signing a contract, I can sign for Lubrizol, and then Lubrizol is going to be bound by that contract. If I sign it with my own name, if I sign Jeff Lauderdale on a contract, without trying to bind Lubrizol, without the intent to bind Lubrizol, then the person who contracted with me is not going to have rights against Lubrizol, and that's exactly the situation that we have here, is that ACL is trying to hold my client liable for a contract that didn't sign. Your opponent argues that there's something called a parent agency. Yes, Your Honor, and a parent agency is what we're really here on today. I've never heard of that before. Okay. Well, to have an apparent agency, it's simply the concept of apparent authority. If we are holding somebody out as our agent, that agent can then sign contracts on our behalf or do some action within the scope of the agency on our behalf, but we don't have that here. So would an apparent agency be where the principal had created an impression that some other firm or person was an agent? Well, it has to be a lot more than an impression, Your Honor. Under Indiana law, there are certain elements that you have to have to get to apparent authority. There has to be an express manifestation by the principal that the agent is, in fact, that principal's agent. Then why is it apparent? Why isn't it an agency, simply? Because there are other factors that you have to have to have an actual agency. And besides, you need an apparent agency to go with quasi-contract and constructive fraud. Well, I don't know how to answer that question, Your Honor, because I don't believe in the quasi-contract and constructive fraud claims. But what we have here then is a situation where we don't even have the very fundamental foundations of agency because you do not have either in fact or in allegation that VCS was actually acting on Lubrizol's behalf when they contracted with ACL. And as I believe my colleague stated when she was giving her presentation here, the contract is between ACL and VCS. She conceded, I believe, that there is no contract between ACL and Lubrizol, and that's absolutely the truth. So one cannot be alleged because one didn't exist. And so we have a situation here where we're dealing with agency claims, but all we have and all the district court saw was an allegation that Lubrizol said VCS was its agent for sale and marketing of this particular product, but then you have nothing beyond that. You have nothing where VCS is even acting on our behalf or trying to bind us. So the contract claim, the vicarious liability contract claims, and quasi-contract claim, Your Honor, they couldn't stand, and so the district court threw those out. But it's also the same thing with ACL's fraud claim, which they pled against VCS, and as my colleague said, they settled, and then they also tried to plead it against my client, Lubrizol, in vicarious liability, saying that because they allege that VCS was our agent, they're entitled to hold us liable for VCS's fraud. But it's the same problem as with the contract claims. VCS, and there's no allegation, let alone a fact, that VCS acted on our behalf when they were committing fraud. In fact, if I may, the suggestion is absurd. VCS, I mean, the allegations here are that VCS was selling our product as a distributor. We stopped dealing with, and when I say we, Lubrizol, my client, stopped dealing with VCS because VCS had some questionable ethical activities that we got wind of, and so we cut off our distribution channel through them. What VCS did then was turn around, and instead of telling its customer, ACL, hey, I can't sell you the Lubrizol stuff anymore, they lied and started selling a product that was something completely different without telling their customer, ACL. That's not done on our behalf because we're getting no benefit from that whatsoever. If VCS is selling a product that's not ours and passing it off as who knows what, especially if it's the piece of junk that ACL claims it was, and trying to attach our name to it, there's nothing being done there for our benefit or on our behalf whatsoever. So we can't be held vicariously liable under an agency theory or under any theory for fraud that was committed by VCS because that is VCS's own independent action. So the bottom line here is that we just do not even have basic hallmarks of an agency claim, either on the fraud side or on the contract side because we don't have anybody acting on our behalf in these instances, let alone doing so within the scope of the agency, which again, as alleged, was the sale and marketing of the specific product 8411A. The fraud that took place here wasn't the sale or the marketing of 8411A. It was the sale of a different product, apparently a fraudulent counterfeit product that VCS continued to sell after the fact, after we had cut them off. I see my time is just about up here. If Your Honor's have no more questions, I'll sit down and ask that you affirm the decision of the district court, which granted our motion to dismiss. Thank you, Mr. Lauderdale. Thank you. Ms. Stennett? Just a couple of points, Your Honor. Opposing counsel did say that we did not allege anything beyond just saying, which they did make the representation that this is our exclusive agent for the sale, marketing, and testing of this Lubrizol additive. We have a litany of allegations beyond that that explains during the field test how they both acted collectively as a unit. VCS and Lubrizol were one and the same. Lubrizol's legal department drafted documents for them and negotiated deals. Vice versa, VCS negotiated deals to protect Lubrizol. This went on over a course of years. They made representations. They bound one another. Well, Mr. Lauderdale said that VCS sold a defective product not made by Lubrizol, and Lubrizol derived no benefit from the sales. And in that situation, VCS would not be an agent of Lubrizol. What has happened here, Your Honor, and I think it's important to note, is that Lubrizol terminated the relationship, as everyone agrees, because of unethical behavior. They already knew that orders had been placed for this additive and that ACL expected that additive to come from Lubrizol. They knew this. They made a conscious decision after developing a two-year relationship and saying this is our person, this is our agent. They made the conscious decision to not pick up the phone and call ACL and say we're no longer doing business with them. Then, as time went on, they discovered that, in fact, VCS, still to ACL, their agent, was actually selling them something totally different that was not their product and still saying this is the Lubrizol product. They still did not pick up the phone and call. Their legal department did an analysis and said, you know what, we don't have a duty to them, and that's why we're here right now here today. We believe they do have a duty, they do have an affirmative duty, to pick up the phone when they develop a relationship with someone after they hold them out as an agent over the course of two years. First of all, they need to be responsible for their torts, and if they're no longer their agent because of actual and apparent authority, they need to terminate it. That's what the law said. They didn't do that, and ACL had no way of knowing. Need to terminate what? The agency, the authority. But there was no agency. We argue that there was agency. We argue that there was agency throughout the entire relationship. They put themselves out there. They not only said they're our exclusive agent, and we pled that, they also gave them the indicia, the cloak of apparent authority, which we can laugh about what that is, but they did. They let them continue to make representations and bind them throughout. What's the difference between a distributor and an agent? Well, I think that what the cases hold is that a distributor on its own cannot necessarily be an agent, so just by being a distributor of a product doesn't mean you're necessarily an agent. However, that doesn't mean that all distributors can't also be an agent. If you hold your distributor out to be an agent, and there's more there, and in this situation, we have clearly pled that, and that's what I would like to go back to, Your Honors, and then I'll let you go on. Your time has expired. Okay. Thank you. Thank you to both counsel.